IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CARL OLONA,

        Petitioner,

v.                                        CIV 97-573  MV/KBM

JOE WILLIAMS, Warden,

        Respondent.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Carl Olona's Petition for a Writ of Habeas Corpus

under 28 U.S.C. § 2254.  Having considered the arguments, pleadings, relevant law, and being

otherwise fully advised, I find the petition to be without merit and recommend that it be denied.

Specifically, I find that: (1) Petitioner's constitutional challenges to the applicable standards of

review under the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"] are without

merit; (2) his sufficiency of the evidence claim fails regardless of whether AEDPA or previous

habeas standards are applied considering either just the evidence tendered during the state appeal

or all of the evidence presented during these proceedings; and (3) his Confrontation Clause issue

is without merit and, in any event, would constitute harmless error.

### I.  Background

Following bench trial in 1987, Petitioner was convicted of three counts of second degree

criminal sexual penetration, one count of attempt to commit the same, kidnapping and aggravated

burglary.  As a habitual offender, Petitioner's sentence was later enhanced.  He received a total of

thirty-seven years incarceration and two years of parole. *See Answer, Exhs. A-1, A-2.* Olona's conviction was affirmed on appeal, and became final in 1988 after the New Mexico Supreme Court denied certiorari. *Id., Exhs. B-G.*

Petitioner sought no further review for almost ten years. Then on April 23, 1997, the last day of the grace period permitted under AEDPA, he filed the instant petition *pro se* raising the same two issues he raised in his state appeal – violation of the Confrontation Clause and insufficiency of the evidence. When filing his petition, Olona requested leave to file a memorandum in support as he was having trouble "retrieving the necessary documents." *Doc. 2.*

Respondent answered and filed a Motion to Dismiss arguing that the petition is barred by laches and that the state was unduly prejudiced in responding because the stenographic notes and tapes of the state proceedings had been destroyed or lost. *Docs. 21-22.* The first Magistrate Judge assigned the case initially recommended that the petition be dismissed. In light of Petitioner's objections, however, the Federal Public Defender was appointed and the matter was set for an evidentiary hearing on the issue of laches. *Docs. 24, 26.*

Respondent then filed another Motion To Dismiss before the evidentiary hearing was held. This motion addressed the merits of the petition, arguing that the AEDPA's new presumption of correctness under 28 U.S.C. § 2254(e)(2) applies to both fact and law, therefore barring independent federal review of the claims and eliminating the need for the scheduled evidentiary hearing. The Magistrate Judge refused to cancel the evidentiary hearing, noting that it was to be held on the issue of laches. *Docs. 27-30, 38.* The District Judge concurred with this decision and additionally requested "findings of fact concerning the loss of the record proper." *Doc. 44.*

The evidentiary hearing took evidence on the state trial proceedings, trial testimony,

appeal, and the location and loss of the records.  Various people testified, including Petitioner.[1]  During the hearing, Respondent withdrew the laches argument.  *TR, Evid. Hrg., p. 72.*  Briefing on the merits was ordered and recently completed.  In the interim, the matter was referred to me.

## II.  Petitioner's General Constitutional Challenges To AEDPA's Scope of Review Standards Should Be Rejected

Petitioner urges that application of the new AEDPA standards of review would be unconstitutional on several grounds.  He first argues that application of the new deference standards is impermissibly retroactive.  However, the retroactivity argument is settled and has been rejected.  AEDPA standards apply to cases filed after the effective date of the Act.  *See e.g., Lindh v. Murphy,* 521 U.S. 320 (1997); *Wallace v. Ward,* 191 F.3d 1235, 1239 (10th Cir. 1999).

Olona's second and third grounds are related.  He argues that application of the "more deferential" AEDPA standards impermissibly shifts the province of determining federal law to state courts and would allow a state decision to stand that is contrary to the federal constitution in violation of both Article III and the Suspension Clause.  Although the Tenth Circuit has also upheld AEDPA's one-year statute of limitations against a Suspension Clause challenge,  *Miller v. Marr,* 141 F.3d 976 (10th Cir. 1999), *cert. denied*, 119 S.Ct. 210 (1998), it has not addressed the constitutional issues in the present posture.

It appears that only the Fourth and Fifth circuits have considered Article III and Suspension Clause challenges as against AEDPA's deferential review standards.  The Article III and Suspension Clause arguments were rejected by those courts for much the same reasons that

---

[1]  Testimony was also taken from the public defender who represented Petitioner at trial, the attorney who represented him on appeal, and assistant district attorney who assisted the lead prosecutor (the lead prosecutor is teaching in Beijing, China), and the records custodian.

the retroactivity arguments were rejected above. *See Mueller v. Angelone,* 181 F.3d 557, 566-573 (4th Cir.), *cert. denied,* 120 S.Ct. 37 (1999)*; Hughes v. Johnson,* 191 F.3d 607 (5th Cir. 1999).

I am persuaded by the reasoning of the Fourth Circuit in *Mueller* that arguments premised on Article III, the Supremacy Clause, or the Suspension Clause are of the same species and are foreclosed by earlier decisions finding that the AEDPA amendments do not unconstitutionally restrict the scope of habeas review. Furthermore, favorable citations to the *Mueller* decision in its most recent decisions rejecting retroactivity arguments indicate that the Tenth Circuit would also follow *Mueller's* reasoning in rejecting Article III and Suspension Clause arguments. *See Trice v. Ward,* 196 F.3d 1151 (10th Cir. 1999); *Wallace,* 191 F.3d at 1239. Accordingly, I recommend that the Court reject Petitioner's arguments.

### III. Sufficiency of the Evidence Claim Fails Under Any Standard of Review

### A. Elements of The State Crimes

Petitioner was tried in December 1987 and sentenced during the spring of 1988. The criminal statutes under which he was tried and sentenced have not materially changed since then.

! The felony of kidnapping is defined as "the unlawful . . . restraining or confining of a person, by force or deception, with intent that the victim . . . be held to service [e.g., sexual services] against the victim's will."

! The felony of criminal sexual penetration is defined as "the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission." When perpetrated "during the commission of any other felony," "when the perpetrator is armed with a deadly weapon," or "by force that results in personal injury to the victim," it is a "crime in the second degree."

! The felony of aggravated burglary is defined as the "unauthorized entry of any . . .

4

dwelling . . . with the intent to commit any felony or theft therein and the person . . . is armed with a deadly weapon . . . [or] after entering, arms himself with a deadly weapon . . . [or] commits a battery upon any person while in such place."

!  Battery is defined as the "unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."

*See* N.M. Stat. Ann. §§ 30-3-4 (battery), 30-4-1 (kidnapping), 30-9-11 (criminal sexual penetration), 30-16-4 (aggravated burglary); *see also State v. Williams,* 105 N.M. 214 (N.M. Ct. App. 1986); *State v. Singleton,* 102 N.M. 66 (N.M. Ct. App. 1984).

## B.  State Court Opinion

The New Mexico Court of Appeals panel denied a motion to amend the docketing statement to raise a sufficiency of evidence claim on the ground that claim was not "viable."  The entire analysis of the court was as follows:

Defendant claims that nothing supports the verdicts in this case apart from mere presence, speculation, guess, and conjecture.  We disagree.  The docketing statement recited that the victim testified that defendant pushed his way into her apartment, without her authorization.  The trial court could have inferred from his actions an intent to achieve a further consequence.  There was evidence provided by the victim's testimony that he armed himself after entering and that he threatened her with a knife or scissors, and cut her.  The victim further testified that defendant held her in the bedroom and forced her to commit sex acts.  This satisfies the requirements for kidnaping (sic).  The docketing statement recites that defendant forced the victim to engage in fellatio, cunnilingus, and penile intercourse and that he inserted his finger into her vagina.  The testimony about fellatio, cunnilingus, and digital insertion was sufficient to support the verdict of the court, finding defendant guilty of counts I, II, and IV, respectively alleging fellatio, cunnilingus, and digital insertion.  The ambiguity in the victim's testimony concerning vaginal penetration appears to relate to the penile intercourse count on which the court found defendant guilty of only attempted criminal sexual penetration.  Although the testimony at trial would have supported a verdict for actual penetration, defendant's cross-examination on the penetration issue obviously raised a reasonable doubt in the mind of the trial court.

In reviewing a verdict of conviction, this court reviews the evidence in the light most favorable to the state, resolving all conflicts and indulging in all permissible inferences in favor of the verdict.  *State v. Lankford,* 92 N.M. 1, 582

P.2d 378 (1978). When viewing the evidence in the proper way, there is no question but that sufficient evidence is present for all the convictions. On the only count for which there was doubt, the court found defendant guilty of attempted sexual penetration and the victim's testimony, related in the memorandum in opposition, that defendant attempted to perpetrate the act but she hit him with a fan, was sufficient to support this conviction. Defendant has failed to demonstrate sufficient merit in his claim of insufficient evidence so as to indicate that the issue is in fact a viable claim, hence, we deny the motion to amend the docketing statement.

*Answer, Exh. E.*

## C. Applicable Standard of Habeas Review

Where a state court decides a claim on the merits, a federal court cannot grant a writ of

habeas corpus

> unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Factual findings made by the state courts are entitled to a presumption of

correctness unless a petitioner can rebut the finding by clear and convincing evidence. *Id.,*

§ 2254(e). If the State is unable to produce the "record," for sufficiency of the evidence claims

this Court is required to "determine under the existing facts and circumstances what weight shall

be given to the State court's factual determination." *Id.,* § 2254(f).

Although the Tenth Circuit has not defined the level of deference required by the

amendments,[2] a recent decision is instructive. In *Aycox v. Lytle,* 196 F.3d 1174 (1999), the Tenth

---

[2] The Tenth Circuit has reviewed the approaches adopted in other circuits, but has declined to adopt any certain one noting that the United States Supreme Court recently granted certiorari and may clarify the issue soon. *Smallwood v. Gibson,* 191 F.3d 1257, 1265 n.2 (10th

Circuit reiterated that post-AEDPA standards will not apply if the state court did not decide a claim on the merits. However, the state court need not mention federal law or even contain much reasoning to qualify as an "adjudication on the merits." As long as a claim is decided on the merits and not a state procedural ground, the decision is entitled to deference. *Id.* at 1177. But where there is no "reasoned application of the law to the facts," although the state court's result is entitled to deference, the federal habeas court must engage in an

> independent review of the record and pertinent federal law [to ascertain whether] the result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. This 'independent review' should be distinguished from a full *de novo* review of petitioner's claims.

*Id.* at 1176.

Under pre-AEDPA habeas law, due process "sufficiency of the evidence" claims were regarded as question of law reviewed *de novo,* without any reliance on the statutory presumption of correctness. Even though labeled *de novo* review, the standard governing sufficiency claims is extremely deferential to the fact finder.

The substantive inquiry both then and now is whether, after viewing all of the evidence "in the light most favorable to the prosecution, ***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307,

---

Cir. 1999) (citing *Williams v. Taylor,* 119 S.Ct. 1355 (1999)). Accordingly, some Tenth Circuit decisions apply post-AEDPA standards without further defining what appears on the face of the statute; others apply pre-AEDPA standards; and others apply the various levels of deference defined by the other circuits. *See e.g., Moore v. Gibson,* 195 F.3d 1152 (10th Cir. 1999) (questioning whether sufficiency claim inquiry is one of fact or law for purposes of § 2254(d) as amended, but finding under either view claim failed); *Smallwood,* 191 F.3d at 1265 n.2 (10th Cir. 1999) (same result regardless of level of deference used); *Boyd v. Ward,* 179 F.3d 904, 912 (10th Cir. 1999) (applying old standards).

319 (1979) (emphasis original). Circumstantial evidence is sufficient to support a conviction. Moreover, a federal habeas court cannot weigh conflicting evidence or make judgments about witness credibility. It must presume that the fact finder resolved conflicting inferences in favor of the prosecution even if how the conflicts were resolved is not reflected in the record. *E.g., Messer v. Roberts,* 74 F.3d 1009, 1013 (10th Cir. 1996); *Stallings v. Tansy,* 28 F.3d 1018, 1020 (10th Cir. 1994); *Kelly v. Roberts,* 998 F.2d 802, 807 (10th Cir.1993); *Grubbs v. Hannigan,* 982 F.3d 1483, 1486 n.3 (10th Cir. 1993); *Tapia v. Tansy,* 926 F.3d 1554, 1562 (10th Cir.), *cert. denied,* 502 U.S. 835 (1991); *Cordoba v. Hanrahan,* 910 F.2d 691, 694 (10th Cir.), *cert. denied,* 498 U.S. 1014 (1990).

### D. The State Appellate Decision Applies The *Jackson* Standard And Is A Reasonable A Determination Of The Facts

Here the New Mexico Court of Appeals had to decide the sufficiency of the evidence claim on the merits in order to decide whether to allow amendment of the docketing statement and found that amendment would be futile. This constitutes the decision to be reviewed under AEDPA.

The state court applied a standard of review deferential to the prosecution. It did not engage in an independent review of the trial court record – it reviewed the facts set forth in petitioner's docketing statement and brief. Of those facts, it only credited the victim's statements. In short, the state court applied the pre-AEDPA *Jackson* standard to the facts presented by Petitioner's attorneys.

The facts set forth in the state court decision are the same, though in less detail, as those presented by the record here. Looking solely to the facts recited in the state decision, there is no

basis for finding the state court decision was either based on an "unreasonable" determination of the facts under § 2254(d)(2), "contrary to" federal law under § 2254(d)(1), or unconstitutional under a pre-AEDPA *Jackson* analysis. Petitioner's sufficiency of the evidence argument would fail for precisely the same reasons as set forth above by the state court.

### E.  A Review Of The Habeas Record Bolsters The Conclusion That The Evidence Was Sufficient

Given the procedural history of this case and for efficiency's sake, this Court has also reviewed all of the evidence presented in the record proper and taken in these proceedings. Having considered the question *de novo* under the pre-AEDPA *Jackson* standard, the Court finds Petitioner's case for a sufficiency of the evidence violation even weaker.

In addition to the complainant testifying that petitioner pushed his way in to her apartment asking to use the telephone, picked up a scissors or knife from her apartment and threatened to use them, corralled her in the bedroom by threatening her, sexually assaulted her, and cut and hit her on the forehead, there was evidence from the officers that:

- an officer responding to an unrelated incident at the apartment complex observed a car parked in complainant's parking lot with its windows open and keys in the ignition. Finding that suspicious, the officer called in the tags and learned the car belonged to Petitioner;

- after receiving the complaint and a physical description of the perpetrator, Petitioner's car was found gone from its previous spot and found with a warm engine in front of his house;

- when officers knocked on the front door of Petitioner's house, he was observed trying to exit the back;

- Petitioner initially denied being at the complainant's apartment or driving his car; and

- a test of Petitioner's undershorts revealed body fluid containing a foreign enzyme

consistent with the complainant's enzyme type.

Petitioner urges this Court to find the complainant's version of the facts "incredible."  Yet, the circumstances under which a federal habeas court can find testimony "inherently incredible" are extremely circumscribed:

> to be considered incredible, [the testimony] "must be unbelievable on its face, i.e., testimony as to facts that [the witness] physically could not have possibly observed or events that could have not occurred under the laws of nature." . . .  Confused, self-contradicting testimony by a drug addict does not make the witness's testimony inherently incredible. . . .  Nor does that fact that there are several conflicting versions [of the] events . . . .  Such inconsistencies are matters within the province of the [fact finder].

*Tapia*, 926 F.2d at 1562 (citations omitted).  I will examine the asserted "incredibility" of the victim's testimony in light of this standard for review.

## 1.  The Rape Charge

According to Petitioner's brief on direct appeal, at trial complainant testified that "some" penetration had taken place.  When she was cross-examined about her prior statement to police officers that no penile penetration took place, she explained that she did not did not know what penetration meant.  Counsel unsuccessfully sought to introduce evidence (more fully discussed in Part V of this opinion) that she was the complainant in a prior rape case to impeach her assertion that she did not understand the meaning of "penetration."

A review of the complainant's statements to the police and their reports of her statements show there was one instance where she responded "no" to the question whether there was "penetration" by Petitioner's penis.  In context, the record is clear that prior to trial the complainant consistently related that Petitioner was trying to "stick" her with his penis but did not

succeed because she hit him with a fan.  Defendant's cross-examination was obviously effective

on the penetration issue, however – Petitioner was not found guilty of rape, only attempted rape.

Even assuming that her purported explanation for the inconsistency in "no" and "some"

penetration was utterly unbelievable, that is not grounds for finding every bit of her testimony

'inherently incredible," even when coupled with the other alleged inconsistencies.[3]  The alleged

inconsistencies merely go to the weight and credibility of the evidence, a matter for the trial judge

to resolve.  Accordingly, the testimony will not be disregarded in the Court's analysis.

## 2.  The Aggravated Burglary Charge

Petitioner argues that the evidence was insufficient to support a finding of aggravated

burglary because, after forcing his way into her apartment, the complainant "gave" Petitioner

permission to use the telephone.  This Court has carefully reviewed the tape of the interview by

defense counsel with the complainant, and all of the officer's notes and transcripts of their

interviews with her.   She related this narrative to defense counsel on July 20, 1987 :

> I was unlocking the door, he came up behind me, put his hand on
> the door, pushed his way in, wanted to use the phone 'cause he was
> lost, he used the phone, I was in the bathroom and I was afraid of
> him and I was trying to find something to hit him with.  He came in
> after me, dragged me into the bedroom, raped me and left.

*Olona Tape--Def. Interview 12/2/97, side 1.* Upon more detailed questioning she said that outside

the house Petitioner grabbed the door, pushed it and her into the house while saying he was lost

and wanted to use the phone.  She asked him what he was looking for.  He said he was from out-

---

[3]  They are: that the cuts on her forehead looked like they could have been self-inflicted
with a fork; the complainant testified that the weapon was either a scissors or a knife; there was
no medical corroboration of her being punched in the face; her apartment did not exhibit signs of
struggle; and Petitioner was not injured despite her having hit him with a fan.

of- town and wanted to know the location of a certain building. In response to his question, she told him where Zuni Street was located.

> Then he asked if he could use the phone again but by this time he had already gotten inside my house. And I told him yeah, but I was getting real scared of him so he used the phone and I went in the bathroom but he came in after me . . . . [The bathroom door lock did not work]. [He] grabbed me by my arms . . . . He told the quieter I would be, the easier it would be. And then he took me in my bedroom and threw me on the floor and shut the door to the bedroom.

*Id.* Her other statements convey the same scenario.

In context, reasonable inferences that could be drawn by a reasonable fact finder are that: (1) the unauthorized entry was already accomplished when she subsequently said "OK" as he reiterated his intention of using the telephone; (2) she did not have a change of heart and invite him into her home; and (3) she was trying to avoid escalating a situation that appeared menacing to her. Accordingly, Petitioner's argument on this point is without merit.

### 3. The Kidnapping Charge

Petitioner also argues that forcing the complainant into a bedroom to commit sexual acts results in merger of the kidnapping count with the criminal sexual penetration counts. The cases he cites in support to do not support the proposition that the crimes merge as a matter of law. To the contrary – the two crimes have distinct elements and where they occur separately they do not merge. The issue is a factual one.[4]

---

[4] *See Pisio,* 119 N.M. at 261-62 (N.M. Ct. App 1994) (complainant and defendant were friends and entry into home was consensual and restraint started when complainant resisted advances); *State v. Tsethlikai,*109 N.M. 371, 374 (N.M. Ct. App. 1989) ("Defendant's intent to hold the complainant for services could have been established by his original assault on the complainant while she was asleep. The criminal sexual penetration occurred later"); *State v. Williams,* 105 N.M. at 218 ("Here, there was evidence apart from the subsequent sexual assault

One of the cases cited by Petitioner indicates that the "key to the restraint element in kidnaping (sic) is the point at which Victim's physical association with Defendant was no longer voluntary." *State v. Pisio,* 119 N.M. 252 (N.M. Ct. App. 1994) (quotation cited with approval in *State v. Allen,* 1999 WL 128912 (N.M. 12/1/99) and *State v. Foster,* 126 N.M. 646 (N.M. 1999)). In this case, the kidnapping occurred and was complete prior to the acts comprising criminal sexual penetration. Indeed, the "the unlawful . . . restraining or confining of a person, by force or deception, with intent that the victim . . . be held to service [e.g., sexual services] against the victim's will" occurred as early as when he forced his way into the apartment under a pretense of having to use the telephone or at the very least when she retreated to the bathroom.

## F. Conclusion on the Sufficiency of Evidence Issues

In summary, Petitioner waived a jury and tried the case to a trial judge. This case amounted to a credibility contest where, except for the testimony about "some" penile penetration, the victim's version, along with corroborating circumstantial evidence testified to by police officers, was credited by the trial judge. This Court cannot weigh the evidence or reassess credibility. On the basis of the evidence as recited by the state court or as further developed here, viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the prosecution, a reasonable trial judge could find Petitioner guilty beyond a reasonable doubt of the offenses for which he was convicted.

---

from which the jury could infer that defendant restrained the complainant with the intent of holding her for services. Under the facts, the assault with intent to commit CSP occurred after the complainant had been restrained and held for services."); *Singleton,* 102 N.M. at 72 ("Under the facts of this case, the kidnaping (sic) occurred prior to the acts of criminal sexual penetration. Where different evidence underlies two offenses, no merger is required.").

## V. Confrontation Clause Issue Is Without Merit And, In Any Event, Harmless

### A. Factual Background

According to Petitioner's docketing statement, trial was held on December 9 - 10, 1987. On the first day of trial, Petitioner filed a motion to allow defense counsel to "mention the alleged victim's prior sexual history (i.e., her activity in Albuquerque "in the days" prior to the incident) in the opening statement and to fully cross examine the alleged victim concerning her prior accusation of being a victim of Criminal Sexual Penetration in El Paso, Texas." Although Peitioner filed a wavier of his right to a jury trial that same day, it is unclear whether he filed the waiver before or after the trial judge's ruling on the motion.

Just before the trial, the trial judge held an *in camera* hearing on the motion. The complainant testified as follows. She went to visit her boyfriend, Rick, in El Paso for the weekend. A male friend named Louie picked her up at the airport without Rick. They went to some bars and back to Louie's apartment where a party was going on. She went to bed about 2:00 a.m. and later awoke to find Louie in the bed. He proceeded to force her to have sex, and the following morning Louie locked her in his apartment. She called the police to come let her out, at which time she reported being raped. At the subsequent jury trial, Louie was found not guilty.

The trial judge in Petitioner's case excluded the evidence under New Mexico's "rape shield" law, N.M. Stat. Ann. § 30-9-16, finding "prejudice to the victim outweighed its relevance" under evidentiary Rule 413. *Docketing Statement, p. 2.* At trial, the complainant testified that "some" penile penetration had occurred. While Petitioner's attorney successfully impeached her on that point, he was not allowed to do so by evidence of the El Paso rape trial.

14

## B.  The Confrontation Clause Claims Were Exhausted

Like traditional rape shield laws, New Mexico's excludes evidence of the complainant's "past sexual conduct" unless the conduct is material and its probative value outweighs the prejudicial nature of the evidence.  *See* N.M. Stat. Ann. § 30-9-16.  Petitioner sought to inquire as to the complainant's sexual history just before the incident, presumably to rebut physical evidence of sexual intercourse.  Petitioner neither appealed, nor presents here, a Confrontation Clause argument as it pertains the trial court's decision to exclude this type of evidence.

Also at the trial court level, Petitioner requested to introduce evidence of the El Paso rape trial so he could "fully" cross-examine the complainant –to impeach her credibility in  general and specifically on the point about penetration.  *Answer, Exh. C, pp. 4, 7-8, 10.*  Olona's *pro se* petition raises the identical issues.  Neither document, however, clearly casts the issue as the Federal Public Defender does in the present pleadings.  Now Olona contends that the complainant perceived that her lack of corroborating physical injury may have resulted in the acquittal in the El Paso rape case.  Petitioner argues that the victim thus had a "motive" to fabricate evidence of force against Olona and relies on "suspicious" cuts on her forehead as support.

Respondent argues that because suspicions about the cuts on the head were not argued in support of the Confrontation Clause issues at the state level, the claim is not exhausted and is now procedurally defaulted.  The "fair presentation" requirement for exhaustion permits the state court to first address the constitutional claim.  Nevertheless, a habeas petitioner can present "bits of evidence to a federal court that were not presented to the state court" as long as the evidence does not place "the [habeas] claims in a significantly different legal posture" from that presented to the state courts.  *DeMarest v. Price,* 130 F.3d 922, 932 (10th Cir. 1997) (internal quotations

deleted for clarity).

Defense counsel testified that when he interviewed the complainant, she became upset at this questions about the El Paso case. At that point, he became suspicious that she might have inflicted the cuts on her forehead.[5] There is no testimony that this suspicion was communicated to the trial court and it is not reflected in the documents on appeal. However, the public defender's testimony establishes that the "motive to fabricate evidence" argument is not newly-conceived more than ten years after the conviction. Even though the briefs on appeal and the petition here do not expressly mention motive, fabrication, or cuts on the forehead, they do fairly raise the claim that Petitioner wanted to use the El Paso evidence to discredit her allegations generally.

Additionally, in the docketing statement Petitioner cited the Sixth Amendment of the

---

[5] According to the tape of the interview with complainant, after asking general questions about complaint's age, schooling, education, etc., defense counsel asked about the El Paso trial. Complainant began to answer the questions, (yes she testified in El Paso in 1986 at a jury trial). When he asked whether she had testified about a man sexually assaulting her, she said "I don't think that has any relevance to this case at all." The following colloquy took place:

> Defense Counsel: I'm allowed to ask it. I might not be . . .
> Complainant: Do I have to answer you? I don't think that has anything to do with this.
> Defense Counsel: Well, . . .
> Complainant: And if you want to know about that you can read the police statements. If I can't bring up the fact that he has done this before, then you can't, shouldn't be able to bring up the fact that this has happened to me before. This is justice?
> Defense Counsel: It's really up to the. . .
> Complainant: I'm sorry.
> Defense Counsel: Let me explain something to you.
> Complainant: Nothing you can explain to me is going to make me change my mind.

Despite defense counsel trying to explain the reasons why he was entitled to pursue this line of questioning, she persisted in refusing to answer, indicating that if it was the judge's decision on admissibility, then she would talk to him about it. The prosecutor, presumably, also indicated that some inquiry was legitimate and that she would not let the questions become harassing. Defense counsel then requested that they go off the record, which they did, and when the tape resumed no further questions about the El Paso incident were asked.

United States Constitution and *Davis v. Alaska,* 415 U.S. 308 (1974), thereby raising the issue as

a federal constitutional claim before the state courts. Although the New Mexico Court of Appeals

cited only one state case in support of its finding, that case in turn relied on a federal

constitutional decision. *Answer, Exh. E, p. 4.* These observations, coupled with the lack of a full

record, warrant finding in favor of exhaustion. Accordingly, the merits of the claim will be

examined.

### C. The Confrontation Clause Issues Are Without Merit

Whether analyzed as a Sixth Amendment or Due Process issue,[6] the right to cross-

examination protected by the Sixth Amendment is not absolute. A balancing of competing

principles frequently underlies a confrontation claim analysis. "[T]he right to present relevant

testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate

other legitimate interests in the criminal trial process.'" *Rock v. Arkansas,* 483 U.S. 44, 55 (1987)

(quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)).[7]

Rape shield laws or evidentiary rulings in rape cases present a classic area where evidence

---

[6] In his *pro se* petition, Petitioner invokes both.

[7] *See also e.g., Michigan v. Lucas,* 500 U.S. 145 (1991) (*per se* preclusion of evidence for failure to comply with rape shield pretrial notice requirement is error, but legitimate interests served by statute can justify severe sanction of preclusion); *Richmond v. Embry,* 122 F.3d 866, 871-872 (10th Cir. 1997) ("to determine whether a defendant was unconstitutional denied his or her right to present relevant evidence, we must balance the importance of the evidence to the defendant against the interests the state has in excluding the evidence"), *cert. denied,* 118 S.Ct. 1065 (1998); *Hogan v. Hanks,* 97 F.3d 189, 191 (7th Cir. 1996) ("although the Supreme court has frequently held that state must permit cross-examination that will undermine a witness's testimony . . . . it had never held – or even suggested – that the longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility pose constitutional problems. No federal court of appeals has done so either."), *cert. denied,* 520 U.S. 1171 (1997).

can be excluded, particularly where the evidence pertains to the claimant's prior sexual history. *E.g., Stephens v. Miller,* 13 F.3d 998, 1002 (7th Cir.), *cert. denied,* 513 U.S. 808 (1994). It appears that most federal and state courts find "past false accusations of rape" either fall outside of the rape shield statutes or present an exception to the statute. Nevertheless, general evidentiary principles still apply and such evidence is only admissible if it is relevant and "demonstrably false." Its probative value must go to establishing bias toward defendant or the prosecution as opposed to a general attack on the credibility of the complainant. *See e.g., Hughes v. Raines,* 641 F.2d 790 (9th Cir. 1981); *United States v. Stamper,* 766 F. Supp. 1396 (W.D.N.C. 1991) (and cases and authorities collected therein), *aff'd sub nom., In re One Female Juvenile Victim,* 959 F.2d 231 (4th Cir. 1992) (unpublished); 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5387 (1980 & Supp. 1999) (notes 13-16 and accompanying text); Nancy M. King, *Impeachment of Cross-Examination of Prosecuting Witness in Sexual Offense Trial by Showing That Similar Charges Were made Against Other Persons,* 71 A.L.R.4th 469 (1989 & Supp. Sept. 1999).

In *Hughes v. Raines*, a federal habeas decision issued prior to Petitioner's conviction involved a case virtually identical to the one at bar. The Ninth Circuit found no violation of Sixth or Fourteenth Amendment confrontation rights of a state habeas petitioner where the trial judge excluded cross-examination on the subject of the complainant's prior charges of rape. The court found that a district attorney's decision not to prosecute does not establish the charges were false. *Hughes* further noted that even if the prior charges were false, evidentiary rules "reflect a general reluctance to draw an inference that because e person may have acted wrongfully on one occasion, he or she also acted wrongfully on the occasion at issue." *Hughes,* 641 F.2d at 793.

Significantly, the prior accusation was of little probative value because of the differing factual allegations underlying the prior rape charge and the new charge. In *Hughes*, the prior rape involved an inebriated woman on a date in the defendant's apartment, and had consented to some physical contact. In contrast, the new charge under consideration by the Ninth Circuit consisted of allegations that the victim got into a car with someone who offered her assistance in getting a job. There was corroborating physical evidence that she had been raped while the defendant's version of the events was found to be contradictory and implausible. Finally, the *Hughes* court found that the "object of the intended cross-examination . . . was not to establish bias against the defendant or for the prosecution; it merely would have been to attack the general credibility of the witness on the basis of an unrelated prior incident." *Hughes,* 641 F.2d at 793.[8]

All of the decisions cited by Petitioner in support of his position (*Manlove, Olden, Begay, Platero*) are distinguishable. After Petitioner's conviction was final, the New Mexico Supreme Court issued *Manlove v. Sullivan,* 108 N.M. 471 (N.M. 1989). *Manlove* appeared to overrule one portion of *Johnson* in dicta and held prior rape is not "sexual conduct" under the rape shield law. *Id.* at 475 n.2. However, as a later decision points out, *Manlove* did not hold that prior

---

[8]  The state decision in this case relied on *State v. Johnson,* 102 N.M. 110 (N.M. Ct. App. 1984). The complainant in *Johnson* had make "some two dozen" complaints, but the court found the evidence inadmissible under the rape shield law or general evidentiary principles. The court first noted that the New Mexico rape shield statute does not restrict "sexual conduct" to consensual sex and, therefore, prior rapes fall within its purview. It specifically cited *Hughes* and other such cases and adopted its reasoning holding that the prior allegations "must be demonstrably false," otherwise the complainant would be put "on trial as to the truthfulness of any complaint to the police which did not result in arrest or conviction. . . . the complaints, without convincing evidence of falsity, have no relevance" *Id.* at 118. The lack of probative value of such prior allegations was also the basis for the court concluding that the evidence was not admissible under 608(b) to show untruthfulness and lack of veracity or under 404(b) as bearing on motive, habit, or intent. *Id.* at 119.

allegations of rape are automatically admissible. *State v. Scott,* 113 N.M. 525 (N.M. Ct. Ap.

1991).  Moreover, *Manlove* did not mention the *Johnson* holding that prior allegations must be

demonstrably false and must balance in favor of admission.

Indeed, one of the cases cited by *Manlove* in support of the proposition that discretion to

exclude the evidence is weighed against confrontation rights was *Hughes.*  The *Manlove* case did

not arise in the context of a denial under the rape shield statute or any other evidentiary ruling.  It

arose out of a denial of a continuance for failure to abide by state local rules and notice concerns

as opposed to a ruling on confrontation issues.  Whether the testimony would have been

admissible under the rape shield law was introduced by court on state habeas review.

Finally, the testimony received in *Manlove* itself established the falsity of the allegation.  A

roommate of the complainant was going to testify that the complainant "concocted stories of

abduction and molestation several times in the past, that these stories resembled the facts alleged

in the present case, that she had once been forced to recant such a story, and that, in the

[roommate's] opinion, the [complainant] was the type of person who would not hesitate to see an

innocent person convicted of a crime."  *Manlove,* 108 N.M. at 239 (N.M. 1989).  There was no

medical evidence showing that any "sexual activity, consensual or otherwise, had occurred."

*Manlove v. Tansy,* 981 F.2d 473, 479 (10th Cir. 1992).

All of the other cases *Manlove* cited in this regard are either distinguishable on their facts,[9]

----

[9]  *Olden v. Kentucky,* 488 U.S. 227 (1988) was cited by *Manlove* and one of the cases
relied on by Petitioner.  Olden was a summary reversal with unusual facts.  The then-married
white rape complainant was having an affair with a black man, petitioner's brother.  She delivers a
present to her boyfriend at a bar and leaves, intoxicated with his brother and another man.  Her
boyfriend later saw her getting out of his brother's car.  When he confronted her originally she
claimed she was gang raped by four men, then claimed it was only two, and at trial claims only
petitioner raped her and for the first time alleges a knife was involved.  By the time of trial she

predate the movement toward more protection for complainants in rape cases,[10] or stand for the

proposition that prior allegations of rape must be demonstrably false and its probative value

balanced against the prejudicial effect.[11]

In the absence of any controlling authority to the contrary, I find the *Hughes* decision and

others following it persuasive on the issue of whether a confrontation violation occurred. That

the El Paso case ended in an acquittal does not definitively establish that the charges were false,

---

was separated from her husband and living with petitioner's brother. At trial others, including a
police officer, testified that they saw the complainant with petitioner during the time of the alleged
rape and she did not look upset or signal for help. Petitioner wanted to introduce evidence of her
relationship with his brother and argue that she fabricated the rape charge to preserve her
relationship with his brother. The trial judge did not allow the testimony. The jury returned
inconsistent verdicts, acquitting petitioner of kidnapping and rape and of being a principal or
accomplice to any offense, but convicting him of forcible sodomy. The Kentucky courts found
that the evidence of living together was not barred under the rape shield law and was relevant, but
that because the complainant was white allowing evidence of a black boyfriend would be unduly
prejudicial to her. The Supreme Court summarily reversed holding that speculation about jury's
racial bias does not justify excluding strong evidence supporting fabrication and that exclusion of
the evidence could not be considered harmless given the inconsistent verdict.

[10]*People v. Hurlburt,* 333 P.2d 82 (Cal.Ct.App. 1958) is a very old case, predating rape
shield statutes and the notion that the courts should rule on these lines of inquiry as opposed to
the question being sprung on the witness during trial. The opinion recounts the ancient roots for
allowing inquiry into prior false allegations of rape – the ease of fabrication and the fear that the
accused will be defenseless against the charge. While the decision ultimately permitted the
inquiry, the opinion also points out that claims of complainant fabrication are equally "easy to
make" and that "courts should be vigilant in seeing to it that the privilege of cross-examination
here approved should not be abused."

[11] *People v. Simbolo,* 532 P.2d 962 (Colo. 1975) (without inquiring ahead of time counsel
asked whether eleven-year old complainant accused another man of rape; court held the "prior to
asking such a question, counsel be possessed of *quantum sufficit* to make the question not unfair
and not unsupportable in some manner. It was not error for the court so to limit cross-
examination.")*; State v. Anderson,* 686 P.2d 193 (Mont. 1984) (admissible only if "the offenses
were proven or admitted to be false . . . [i]f the charges are true or reasonably true, then evidence
of the charges is inadmissible, mainly because of its prejudicial effect . . . but certainly because of
its irrelevance to the instant proceeding.").

any more than does a decision not to prosecute. Petitioner cites no authority holding to the contrary. The El Paso case and Petitioner's case are strikingly dissimilar and, therefore, the relevance and probative value of the El Paso case was tenuous at best – a situation involving drinking with a friend and voluntarily sleeping in his home vs. an uninvited stranger forcing his way into the complainant's home where she tried to avoid him. Accordingly, I find no confrontation clause violation occurred.

### D.  Any Error Was Harmless

Assuming a violation occurred, Confrontation Clause errors nonetheless are not subject to a higher standard of review that any other constitutional trial error, and the *Brecht* standard for harmlessness applies. "A federal court reviewing a state court determination in a habeas proceeding should not grant relief unless the court finds the trial error 'had a substantial and injurious effect or influence in determining the . . . verdict . . . . To obtain relief for the error, the habeas petitioner must establish that [the error] resulted in actual prejudice." *Crespin v. State of New Mexico,* 144 F.3d 640, 649 & n.6 (10th Cir. 1998) (internal quotations omitted for clarity). This court must examine the omitted evidence "in light of the entire record to determine the error's possible effect." *Id.* at 649.

Here Olona's inconsistencies in his statements to the police and the other corroborating circumstantial evidence was a sufficient basis alone for the trial judge to reject Petitioner's version of the events and credit the complainant's version. The trial judge would have had to weigh the relevance of the El Paso rape case, even if it had been admitted. That he made a relevancy determination before trial had no different effect on the outcome. Complainant was successfully cross-examined on her assertion that she did not understand what "penetration" meant.

Therefore, even if the line of inquiry had been allowed, I alternatively find that this issue is without merit because any resulting error was harmless. *See e.g., Kelly v. Meachum,* 950 F. Supp. 461, 472 (D. Conn. 1996).

Wherefore,

**IT IS HEREBY RECOMMENDED THAT the Petition be denied.**

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

Karen B Molzen

UNITED STATES MAGISTRATE JUDGE